577 F.2d 435
 Mack KING, Jr., Appellant,
v.
Lou V. BREWER, Warden of the Iowa State Penitentiary at Fort
Madison, Iowa, Appellee.
 No. 77-1707.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1978.
Decided May 31, 1978.
Rehearing and Rehearing En Banc Denied July 24, 1978.
 
 1
 John M. Thompson, Prisoner Assistance Clinic, Iowa City, Iowa, on brief for appellant.
 
 
 2
 Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellee; Richard C. Turner, Atty. Gen., Des Moines, Iowa, on brief.
 
 
 3
 Before GIBSON, Chief Judge, STEPHENSON, Circuit Judge, and BECKER, Senior District Judge.*
 
 
 4
 WILLIAM H. BECKER, Senior District Judge.
 
 
 5
 This is an appeal from a judgment of a federal district court denying a petition of federal habeas corpus under § 2254, Title 28, U.S.C., seeking to invalidate the state court judgment of petitioner's conviction of armed robbery. The conviction was later affirmed by the Supreme Court of Iowa in State v. King, 225 N.W.2d 337 (Iowa, 1975). The petition for federal habeas corpus was based on two grounds, namely: (1) alleged lack of due process, and (2) alleged collateral estoppel under double jeopardy concepts.
 
 
 6
 On November 17, 1973, appellant King was convicted in a trial by jury in the District Court of Scott County, Iowa, of armed robbery on July 7, 1973, of the Medd-O-Lane Dairy Store in Davenport, Iowa. We affirm the judgment of the United States District Court.
 
 
 7
 In affirming the conviction of appellant, the Supreme Court of Iowa held that the failure to object to the introduction of evidence of another crime for which defendant was previously tried and acquitted by jury verdict precluded an appellate review of the alleged trial error of the state district court. This holding was based on Iowa's procedural rule requiring a "contemporaneous objection" to preserve, on appeal, alleged trial error. State v. King, supra, 225 N.W.2d l. c. 341.
 
 
 8
 In his petition for federal habeas corpus, appellant claimed violation of federal constitutional standards of double jeopardy and of due process in the admission of evidence of a crime for which appellant had been previously acquitted. Other claims in the original petition for federal habeas corpus were dismissed without prejudice pursuant to stipulation of the parties (R. 55). Appellant and appellee each filed a motion for summary judgment in the federal district court below.
 
 
 9
 The United States District Court for the Southern District of Iowa[1] granted summary judgment for appellee, without an evidentiary hearing, holding that Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), relied on by appellee, was controlling on the validity of the "contemporaneous objection" rule of Iowa, and also applying the doctrine of invited error in respect to the alleged erroneous admission of evidence (R. 55).
 
 
 10
 In addition to the record on appeal, which included the state court trial transcript, copies of the briefs on appeal in the state supreme court of State v. King, supra, were supplied at the request of this Court. After a complete and thorough review of the available state and federal records, we affirm for the reasons herein stated.
 
 Principal Material Facts
 
 11
 At approximately 7:00 p. m. on July 7, 1973, an armed robbery occurred at the Medd-O-Lane Dairy Store (Medd-O-Lane) in Davenport, Iowa. At approximately 4:30 to 4:45 a. m. on July 8, 1973, about 9 1/2 hours later, a second armed robbery occurred at Cal and Bob's Supermarket (Cal and Bob's) also in Davenport, Iowa. In separate informations, appellant was charged with commission of each of these robberies. Appellant pleaded not guilty to the charges in each information.
 
 
 12
 Appellant was first tried on October 15, 1973, on the information charging the robbery of Cal and Bob's on July 8, 1973. An alibi defense was presented by appellant. The trial resulted in a jury verdict of acquittal of appellant.
 
 
 13
 Thereafter, appellant was tried on November 13, 1973, for the earlier robbery of Medd-O-Lane on July 7, 1973. An alibi defense was presented, but this trial resulted in a conviction of appellant who was thereafter sentenced to a term not to exceed 25 years in the state penitentiary.
 
 
 14
 Appellant and appellee entered into a stipulation that the factual contentions and testimony of appellant and his witnesses concerning events of July 7 and July 8 asserted in appellant's alibi defenses were the same in both trials (R. 41). Appellant and appellee further stipulated that the facts stated in the direct testimony of Mr. and Mrs. Calvin Miller were identical in both robbery trials (R. 41). (In the trial for the robbery of Cal and Bob's on July 8, 1973, Mr. and Mrs. Miller were the state's eyewitnesses on identification of appellant, and were the state's rebuttal witnesses in the trial for the robbery of Medd-O-Lane.)
 
 
 15
 The arresting officer testified that when appellant was arrested at approximately 5:10 to 5:30 a. m. on July 8, 1973 (Tr. 374, 446), he was suffering from recent birdshot-like pellet wounds and an injured left hand (Tr. 433, 440, 443), which the state contended he had sustained during the robbery of Cal and Bob's. These circumstances, and the state's evidence identifying appellant as the robber of both Cal and Bob's and Medd-O-Lane, presented to the appellant complex problems in his two trials of producing evidence of (1) an alibi for the time of the robbery at Medd-O-Lane at about 7:00 p. m. July 7, 1973, (2) an alibi for the time of the robbery of Cal and Bob's at approximately 4:30 to 4:45 a. m. July 8, 1973, and (3) explanation that the pellet wounds and injured hand were sustained at a time and place unconnected with the robbery of Cal and Bob's. To meet these evidentiary problems, appellant chose to testify in his defense in the first trial for the robbery of Cal and Bob's to a long, and partly immaterial narrative, of his movements and experiences on July 7 and 8, 1977, which will be described hereinafter.
 
 
 16
 The question submitted to the jury in the first trial was whether the state had met the burden of proving beyond a reasonable doubt that the appellant committed the robbery of Cal and Bob's at approximately 4:30 to 4:45 a. m. July 8, 1973. The jury found the appellant not guilty of this offense. The verdict could reasonably have rested (1) on the disbelief of the state's evidence in chief of identification of appellant, (2) the belief of appellant's testimony of his whereabouts at the time of the robbery of Cal and Bob's, or the combination of (1) and (2).
 
 
 17
 As stated, the eyewitnesses who testified for the state in the case in chief in the trial of appellant for the robbery of Cal and Bob's were Mr. and Mrs. Calvin Miller. The eyewitnesses who testified for the state in the case in chief in the trial of appellant for the robbery of Medd-O-Lane were Julie Beth Kyle, Bobbie Marcussen, and Sheila Brune. Therefore, the state's evidence in chief in the two trials was different.
 
 
 18
 Under no reasonable or possible construction of the record of the first trial of appellant for the robbery of Cal and Bob's, was the jury required or permitted to make a finding of the whereabouts of appellant at the time of the earlier robbery of Medd-O-Lane at approximately 7:00 p. m. July 7, 1973. Recognizing this, appellant's able counsel relies on a contention that the double jeopardy principles of collateral estoppel require invalidation of the later conviction of appellant of the earlier robbery of Medd-O-Lane.
 
 
 19
 Appellant, in support of his alibi defense in the trial for the earlier robbery of Medd-O-Lane, testified in detail that he left his home at 6:25 in the evening of July 7, went to a pool hall in the 700 Block on Harrison in Davenport, Iowa, and then to a nightclub on Ninth Street in Rock Island, Illinois; that he left Rock Island about 7:30 p. m. and went to the East Moline Downs race track, in Illinois, where he arrived shortly before 8:00 p. m., and stayed there until 10:30 p. m. (Tr. 381-84); that after leaving the race track he went to Percy's "nightspot" (Percy's) on 18th Street in East Moline, Illinois, where he remained until 3:00 a. m. July 8; that after leaving Percy's at 3:00 a. m. on July 8, appellant saw a man in the passenger side of appellant's car which was parked nearby, trying to get into the glove compartment, and that he became involved in a fight with this man and received the pellet wounds and an injured hand as a result (Tr. 392-93).
 
 
 20
 Although the record is not absolutely clear, it appears that appellant testified in the first trial for the robbery of Cal and Bob's that, after leaving the scene of the alleged fight, he went to the Eagle Motorcycle Club, the location of which was not stated, where he remained from 4:00 a. m. to 4:30 a. m. (Tr. 414); that upon arriving at his home shortly after 5:00 a. m. he learned that the police were looking for him; that he then left in his car to find out what the police wanted, and that he was arrested at Ninth and Warren Streets in Davenport (Tr. 375).
 
 
 21
 The state introduced evidence, in the second trial for the robbery of Medd-O-Lane, which tended to show that appellant received the pellet wounds and injured hand during the commission of the robbery of Cal and Bob's, rather than during the alleged fight (Tr. 436-526).
 
 Questions for Decision
 
 22
 In this appeal, appellant presents the following three questions for decision: (1) whether the federal district court erred in finding that the state court judgment of conviction of the Medd-O-Lane robbery is based on independent and adequate state grounds of procedural default precluding federal review of the substantive questions because of failure of appellant or his counsel to make a "contemporaneous objection" to admission of evidence of the robbery of Cal and Bob's; (2) whether the federal district court erred in granting appellee's motion for summary judgment denying federal habeas corpus without an evidentiary hearing; and (3) whether the federal district court erred in denying appellant's motion for summary judgment granting the petition for federal habeas corpus.
 
 
 23
 Because we hold that, on the substantive questions, the Court did not err in granting summary judgment for the appellee, it is not necessary to determine the propriety of preclusion of appellant's claims on the merits on state procedural grounds, requiring a "contemporaneous objection".
 
 
 24
 Decision on Denial of Federal Habeas Corpus
 
 
 25
 In reviewing the district court's grant of summary judgment denying federal habeas corpus, the evidence must be viewed in the light most favorable to appellant, and appellant must be given the benefit of all reasonable inferences that can be drawn from all the factual materials before the federal district court. Adickes v. Kress & Co., 398 U.S. 144, l. c. 158-159, 90 S.Ct. 1598, l. c. 1609, 26 L.Ed.2d 142, l. c. 155 (1978); Rinehart v. Brewer, 561 F.2d 126, l. c. 128 (C.A. 8, 1977); Klinge v. Lutheran Charities Ass'n of St. Louis, 523 F.2d 56, l. c. 61-62 (C.A. 8, 1975). Under this standard of review we find that no genuine issue of material fact exists. Therefore, as a matter of law, summary judgment for the appellee, denying habeas corpus, was appropriate.
 
 The Applicable Double Jeopardy Rule
 
 26
 In Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the Supreme Court of the United States held that a state may not put a defendant in jeopardy twice for the same offense. The Benton case made the Double Jeopardy Clause, of the Fifth Amendment to the Constitution of the United States, applicable in state criminal prosecutions by implication through the Fourteenth Amendment to the Constitution of the United States. In reviewing a state court conviction in 1978, the Supreme Court of the United States emphasized that the ". . . constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal. . . . If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." Arizona v. Washington, 434 U.S. 497, l. c. 503, 98 S.Ct. 824, l. c. 829, 54 L.Ed.2d 717, l. c. 726-27 (1978).
 
 
 27
 Earlier in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court of the United States held that collateral estoppel, as limited therein, was a part of that Fifth Amendment federal protection against double jeopardy, and was also applicable in state prosecutions stating:
 
 
 28
 "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. (397 U.S. l. c. 443, 90 S.Ct. l. c. 1194, 25 L.Ed.2d l. c. 475)
 
 
 29
 The Ashe case requires that the rule of collateral estoppel in criminal cases, as defined therein, be applied with "realism and rationality" stating that:
 
 
 30
 Where a previous judgment of acquittal was based on a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."
 
 
 31
 The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180, 184. (397 U.S. l. c. 444, 90 S.Ct. l. c. 1194, 25 L.Ed.2d l. c. 475-76, citing Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, l. c. 38-39.)
 
 
 32
 Evidence was introduced before the jury at the second trial, in which appellant was convicted of the Medd-O-Lane robbery, that supported and rebutted some parts of the continuous narrative of the events on July 7 and July 8 to which appellant had testified previously in the first trial for the robbery of Cal and Bob's on July 8, and again in the second trial for the robbery of Medd-O-Lane on July 7. In the manner described hereinafter, evidence of the robbery of Cal and Bob's and appellant's acquittal in the first trial was received in evidence in the second trial.
 
 
 33
 Appellant contends that the introduction of evidence in the second trial, of the robbery of Cal and Bob's, was prejudicially erroneous because the ultimate issue of whether appellant had committed the robbery of Cal and Bob's had been decided against the state in the earlier trial of appellant for robbery of Cal and Bob's; and that the state was therefore collaterally estopped from introducing this evidence; and that the introduction of this evidence constituted "double jeopardy" under the doctrine of the Ashe case, supra.
 
 
 34
 In the Ashe case, defendant and three others were charged with robbery of six poker players at about the same time, while they were engaged in a poker game. Ashe was separately charged with the robberies of each of the six players. Ashe was then first tried for the robbery of one of the players. In the first trial the jury was instructed that, if they found that defendant was a participant in the robbery, defendant was guilty if any money was taken from the victim, even if defendant did not personally rob this victim. The first trial resulted in an acquittal. Ashe was thereafter tried for robbery of one of the other victims, and was found guilty. The Supreme Court of the United States held that the state was collaterally estopped from relitigating the issue whether defendant was a participant in the robbery because, in the first trial, the ". . . single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." 397 U.S. l. c. 445, 90 S.Ct. l. c. 1195, 25 L.Ed.2d l. c. 476.
 
 
 35
 The Ashe case is not controlling in this appeal. In the Ashe case the separate charges arose out of the same transaction or occurrence. The critical issue in the Ashe case was whether Ashe was a participant, with others, in the robbery of the six players. In acquitting Ashe in the first trial, the jury found that Ashe was not a participant in the robbery of the six players. In the second trial the jury found that he was a participant in the robbery of the six players. In contrast, in this case appellant was charged with committing two separate and distinct robberies of two different stores, separated by distance, circumstances, and time of about nine and one-half hours. These facts distinguish this case from the Ashe case.
 
 
 36
 Appellant also relies on Wingate v. Wainwright, 464 F.2d 209, (C.A. 5, 1972) and Blackburn v. Cross, 510 F.2d 1014 (C.A. 5, 1975), two cases from the Fifth Circuit. In the Blackburn case the Court of Appeals acknowledged that in the Wingate case it ". . . significantly expanded the Ashe holding." 510 F.2d l. c. 1017; Expanding Double Jeopardy: Collateral Estoppel and the Evidentiary Use of Prior Crimes of Which the Defendant Has Been Acquitted, 2 Fla.St.U.L.R. 511 (1974). Assuming that each of these Fifth Circuit cases are correctly decided, neither supports the contentions of appellant. In the Blackburn case, the Court of Appeals stated that ". . . the facts before us are virtually identical to those of Wingate . . . ." 510 F.2d l. c. 1017. In that case the defendant was convicted of sexually assaulting a Ms. Fletcher, after having been previously acquitted of assaulting another woman, Ms. McCune, who lived in the same apartment complex as the prosecutrix. Ms. McCune and Ms. Austin testified for the state that each of them had been assaulted in the same complex by the defendant. The Court of Appeals reversed the conviction because it found that the identity of the assailant committing the assault on Ms. McCune necessarily had been determined in favor of the defendant by the jury in the earlier trial. The testimony of Ms. McCune, for the assault of whom the defendant had been acquitted, had been admitted for the primary purpose of establishing, among other things, the identity of the accused in the commission of the assault on Ms. Fletcher for which defendant was then being tried.
 
 
 37
 In the case at bar, the evidence of the earlier alleged crime was introduced, in rebuttal, primarily to impeach the defendant's voluntary testimony consisting of a continuous narrative covering a large part of two days, and not for the primary purpose of establishing the guilt of the accused in the robbery of Medd-O-Lane.
 
 
 38
 The Wingate and Blackburn cases were later analyzed and distinguished, on grounds applicable here, in a later opinion of the Fifth Circuit Court of Appeals, in Douthit v. Estelle, 540 F.2d 800 (C.A. 5, 1976). In the Douthit case, the defendant had been charged by the State of Texas with committing a series of rapes of the same woman over a 22-hour period. Defendant's principal defense was consent. Defendant was tried and convicted of assault with intent to rape in Travis County after having been acquitted of the rape of the same woman in Williamson County. Even though the prosecution introduced evidence in the Travis County trial which had been introduced in the earlier Williamson County trial, the court upheld the conviction because in the first trial, in the language of the Ashe case, ". . . a rational jury could have grounded its verdict upon an issue other than that which defendant seeks to foreclose from consideration," 540 F.2d l. c. 806. So, even under the expanded doctrine of collateral estoppel, applicable in the Fifth Circuit, the judgment of the district court should be affirmed in this case.
 
 
 39
 The Ashe test is equally satisfied in the instant case. Assuming that the jury in the first trial could have believed that part of defendant's testimony which placed him elsewhere at the time of the robbery of Cal and Bob's, that finding would not be binding on the jury trying appellant for the robbery of Medd-O-Lane because the two robberies ". . . are not only separate in the eyes of the law they are separate in point of fact, being removed from each other by considerable time, distance, and circumstances," as held in the Douthit case, supra, l. c. 805 (footnote omitted). See also United States v. Addington, 471 F.2d 560 (C.A. 10, 1973).
 
 
 40
 There is no collateral estoppel in this case because there was no finding express or implied in the jury verdict in the first trial acquitting appellant of the robbery of Cal and Bob's, that appellant was not guilty of the earlier robbery of Medd-O-Lane.
 
 The Invited Error Issue
 
 41
 As shown in the "invited error" discussion hereinafter, this is a case in which the appellant and his counsel wrongfully attempted to use the prior acquittal as a tactical advantage before the jury. For this separate and independent reason, appellant's contentions based on double jeopardy and collateral estoppel are without merit.
 
 
 42
 The federal district court, in passing upon the cross-motions for summary judgment, stated that it "is of the opinion that the detailed evidence of the Cal and Bob's robbery came into the record because of the conduct and action of petitioner and his counsel, not that of the county attorney. Error, if any, was invited" (R. 55, page 4). We agree, because a thorough review of the trial transcript and record fully supports this finding.
 
 
 43
 In the second trial the first reference in the record to the earlier trial of appellant for the robbery of Cal and Bob's came at a pretrial hearing, when the court cautioned counsel for both sides:
 
 
 44
 Then we can proceed to select the jury, and I wish at this time to caution both counsel in this case in questioning the jury or in any other statements made to the jury, that they must not mention the Cal and Bob robbery by name or by a prior robbery. I think the proper method is simply to mention that the defendant was stopped in relation to another matter, and that's as far as it should go. Now that is it, and I'm sure the County Attorney will observe that, but in the event defense counsel opens the gate on that, then, of course, the bars are all down (Tr. 60).
 
 
 45
 The federal district court's finding that the introduction of the prior alleged robbery was invited by defense counsel, after several indirect and direct references by appellant himself, is fully supported in detail by the transcript of the trial. The county attorney, in questioning Ms. Gloria Jackson, a witness for defendant asked:
 
 
 46
 Q. I'll just ask you to answer this yes or no. This is not the first time you have testified as an alibi witness for Mr. King, is it? (Tr. 360).
 
 
 47
 Defense counsel objected on materiality grounds and the objection was sustained. There was no reference to any particular time or case. The federal district court found, and we agree, that "standing alone, the above question cannot be said to refer to the Cal and Bob's robbery . . . ." (R. 55, pages 4-5.)
 
 
 48
 Thereafter, on direct examination defense counsel questioned appellant about the circumstances surrounding his initial stop by the police on the morning of July 8. Appellant answered concerning his conversation with a police officer:
 
 
 49
 I said, "Now, what's this about?" You know. He said, "Just get on out of the car. It will be cleared up. Some robbery supposed to have happened over on Harrison Street" (Tr. 376).
 
 
 50
 (Cal and Bob's is located on Harrison Street. Medd-O-Lane is located on Rockingham Road.) Still on direct examination of appellant, defense counsel asked this question:
 
 
 51
 Q. You mean you went to the police station?
 
 Appellant answered:
 
 52
 A. I went to the police station. I was questioned a lots about certain robberies. A lot of robberies s'posed to have taken place and (Tr. 376).
 
 
 53
 Later on cross-examination, appellant, despite the trial court's warning, began to inject references to the first trial as a tactic favorable to his defense. Appellant answered the county attorney's question whether he had seen a certain state's exhibit before by unnecessarily referring to the first trial:
 
 
 54
 A. I seen this in court the last time I was in court, yes (Tr. 389).
 
 
 55
 Still on cross-examination, appellant answered a question concerning another state's exhibit, persistently referring to the first trial:
 
 
 56
 A. I didn't have that shirt on during the time I was fighting. Like I testified in the first trial, remember . . . . Remember that testimony? (Tr. 397).
 
 
 57
 Later, defendant unresponsively volunteered in his testimony on cross-examination:
 
 
 58
 THE WITNESS: I thought I was found not guilty on that case (Tr. 402).
 
 
 59
 Following cross-examination the court recessed so that defense counsel could locate another witness whom he wished to call to testify. Following the recess, however, defense counsel elected to recall appellant to the stand. It was during defense counsel's redirect examination of appellant that further specific voluntary reference was made by appellant to the robbery of Cal and Bob's. In this redirect examination of appellant by the defense counsel, the following questions were asked and the following answers given:
 
 
 60
 Q. Mr. King, I believe you testified on cross-examination that you had answered some questions for two officers on July 8th.
 
 
 61
 A. Yes, sir.
 
 
 62
 Q. What questions did these officers ask you?
 
 
 63
 A. They asked me about a robbery of Cal and Bob's Supermarket on Harrison Street.
 
 
 64
 Q. What were the nature of these questions?
 
 
 65
 A. They wanted to know did I rob did I rob this Cal and Bob Market.
 
 
 66
 Q. Did they question you about your activities?
 
 
 67
 A. They did so on that day from the time I left until the time I was arrested.
 
 
 68
 Q. Now, did you tell them about the incident involving your car in Rock Island County?
 
 
 69
 A. Yes, sir. I told them about my car; it was broken into, and about the fight we had.
 
 
 70
 Q. Did they bring any charges against you?
 
 
 71
 A. Yes, sir, they brought a charge for me robbing Cal and Bob's Market.
 
 
 72
 Q. Did you stand trial on those charges?
 
 
 73
 A. Yes, sir.
 
 
 74
 (Whereupon objection by the county attorney that "this is totally improper" was sustained.)
 
 Continuing:
 
 75
 Q. Have you been in court before on well, since July 8th, have you been tried before?
 
 
 76
 A. Yes. Since July 8th.
 
 
 77
 Q. Since July 8th.
 
 
 78
 A. Yes, I have been tried since July 8th.
 
 
 79
 Q. And have you been tried by this court?
 
 
 80
 A. Yes, I have been tried by this court.
 
 
 81
 Q. And after that trial, did the State see fit to bring any other charges against you?
 
 
 82
 A. Yes, sir. After that trial I was found not guilty and now they trying to bring this Medd-O-Lane robbery up.
 
 
 83
 BY THE COUNTY ATTORNEY: Your Honor, I think the record shows this Medd-O-Lane robbery charge was brought long before any prior trial in any other case in this matter, and I would object to this question on this basis.
 
 
 84
 BY THE COURT: The County Attorney may introduce evidence in that respect in rebuttal (Tr. 410-11).
 
 
 85
 The foregoing portions of the transcript show deliberate voluntary references by appellant to the earlier trial and acquittal, as a tactic to secure the advantage of the earlier acquittal of another robbery at another time. This persistent testimony by appellant, against the instructions of the state trial judge, invited the state to introduce in rebuttal some of the testimony at the earlier trial, that contradicted the volunteered and immaterial testimony of the appellant, and impeached his credibility.
 
 
 86
 The record before us shows quite clearly that the trial court admitted evidence that had been previously introduced in the trial for the robbery of Cal and Bob's only in rebuttal of appellant's deliberate wrongful injection of the subject in his testimony before the jury.
 
 Conclusion
 
 87
 For each of the foregoing reasons, jointly and separately, the judgment of the United States District Court, summarily denying the petition of appellant for writ of habeas corpus is hereby affirmed. We affirm on separate independent grounds that (1) there has been no violation of appellant's right not to be placed in jeopardy twice for the same offense, and (2) that there has been no violation of fundamental fairness under the Due Process Clause of the Fourteenth Amendment. Because Iowa's "contemporaneous objection" procedural rule is not relied on in this affirmance, it is unnecessary to consider the assignment of alleged error of the United States District Court in failing to hold an evidentiary hearing on the issue of waiver by failure to make a "contemporaneous objection".
 
 
 88
 The judgment is affirmed.
 
 
 
 *
 The Honorable William H. Becker, Senior District Judge, Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable W. C. Stuart, U. S. District Judge for the Southern District of Iowa presiding